UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELMOR JACOB DE LEON, | ) | 1:10-cv–02250-LJO-SKO-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DISMISS WITHOUT LEAVE TO AMEND |
| | ) | PETITIONER'S DUE PROCESS CLAIM |
| v. | ) | CONCERNING THE EVIDENCE (Doc. 10) |
| | ) | |
| JAMES HARTLEY, Warden, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DENY THE REMAINING CLAIMS IN THE |
| Respondent. | ) | FIRST AMENDED PETITION (Doc. 10) |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
| | | TO DIRECT THE ENTRY OF JUDGMENT |
| | | FOR RESPONDENT AND |
| | | TO DECLINE TO ISSUE A CERTIFICATE |
| | | OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is the first amended petition (FAP), which was filed in the United States District Court for the Central District of California on November 30, 2009, and transferred to this Court on December 3, 2010. Respondent filed an answer with exhibits on June 24, 2010, and Petitioner filed a traverse on July 9 and 14, 2010.

1

1     I.  Jurisdiction

2     Because the petition was filed after April 24, 1996, the

3 effective date of the Antiterrorism and Effective Death Penalty

4 Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh

5 v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008

6 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

7     A district court may entertain a petition for a writ of

8 habeas corpus by a person in custody pursuant to the judgment of

9 a state court only on the ground that the custody is in violation

10 of the Constitution, laws, or treaties of the United States. 28

11 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

12 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, -, 131 S.Ct. 13,

13 16 (2010) (per curiam).

14     Petitioner, an inmate of the Avenal State Prison at Avenal,

15 California, claims that he suffered violations of his

16 constitutional rights when he was found unsuitable for parole by

17 the California Board of Parole Hearings (BPH) after a hearing

18 held at Avenal on September 9, 2008.  (FAP, doc. 10, 1-6.)

19 Thus, violations of the Constitution are alleged.

20     Further, the decision challenged was made at Avenal,

21 California, which is located within the jurisdiction of this

22 Court.  28 U.S.C. §§ 2254(a), 2241(a), (d).

23     Respondent, Warden James Hartley, answered the petition.

24 (Doc. 16, 1, 8.)  Petitioner thus named as a respondent a person

25 who had custody of the Petitioner within the meaning of 28 U.S.C.

26 § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in

27 the District Courts (Habeas Rules).  See, Stanley v. California

28 Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

1  Accordingly, the Court concludes that it has jurisdiction
2  over the proceeding and over the Respondent.

3      II.  <u>Consideration of Dismissal of the Petition</u>

4  Rule 4 of the Rules Governing § 2254 Cases in the United
5  States District Courts (Habeas Rules) requires the Court to make
6  a preliminary review of each petition for writ of habeas corpus.
7  The Court must summarily dismiss a petition "[i]f it plainly
8  appears from the petition and any attached exhibits that the
9  petitioner is not entitled to relief in the district court...."
10 Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir.
11 1990); <u>see</u> <u>also</u> <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir.
12 1990).  Habeas Rule 2(c) requires that a petition 1) specify all
13 grounds of relief available to the Petitioner; 2) state the facts
14 supporting each ground; and 3) state the relief requested.
15 Notice pleading is not sufficient; rather, the petition must
16 state facts that point to a real possibility of constitutional
17 error.  Rule 4, Advisory Committee Notes, 1976 Adoption;
18 <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v.</u>
19 <u>Allison</u>, 431 U.S. 63, 75 n. 7 (1977)).  Allegations in a petition
20 that are vague, conclusory, or palpably incredible are subject to
21 summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d 490, 491 (9th
22 Cir. 1990).

23     Further, the Court may dismiss a petition for writ of habeas
24 corpus either on its own motion under Habeas Rule 4, pursuant to
25 the respondent's motion to dismiss, or after an answer to the
26 petition has been filed.  Advisory Committee Notes to Habeas Rule
27 8, 1976 Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43
28 (9th Cir. 2001).

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, after the answer and traverse were filed, the Supreme Court decided Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011). Because Swarthout appears to apply in the instant case, and because the case is fully briefed, the Court will consider whether Petitioner's allegations concerning the absence of some evidence to support the denial of parole and the application of the "some evidence" rule in Petitioner's case state a claim for relief cognizable in an action pursuant to 28 U.S.C. § 2254.

III.  Background

Petitioner alleged in the FAP (doc. 10) that he was an inmate of the Avenal State Prison serving a sentence of nineteen (19) years to life. The life sentence was imposed on August 16, 1991, by the Los Angeles Superior Court upon Petitioner's conviction of second degree murder, attempted murder, and assault with a firearm in violation of Cal. Pen. Code §§ 187, 664, and 245. (FAP. 1-2.) In addition to the BPH's denial of parole, Petitioner also challenges the decisions of the state courts which upheld the BPH's denial, including the rulings of the Los Angeles County Superior Court on April 1, 2009 (Ans., Ex. 1); the California Court of Appeal, Second Appellate District, on April 30, 2009 (Ans. Ex. 3); and the California Supreme Court on November 10, 2009 (Ans., Ex. 5).

Petitioner raises the following claims in the FAP: 1) the

4

decision violated Petitioner's right to due process of law because it was not supported by some evidence of risk to the public or to society (FAP. 6, 8, 12);  2) the BPH's denial of parole violated Petitioner's right to the equal protection of the laws (FAP 5); 3) Petitioner was subjected to an ex post facto law because the BPH denied parole based on the commitment offense and the same reasons used to deny parole previously (FAP 5, 9); 4) Petitioner's rights under the First Amendment were violated by the BPH's requirement that he attend Alcoholics Anonymous (AA) (FAP 6-10); 5) the BPH violated Petitioner's liberty interest based on state law, and the BPH's decision conflicted with California regulations (FAP 5, 6, 12-13); and 6) the BPH's decision constituted cruel and unusual punishment (FAP 10). Petitioner complains that the decision reflected impermissible reliance on immutable factors such as the circumstances of the commitment offense; further, the board relied on stale evidence of addiction to alcohol, and the psychiatric evidence was favorable to Petitioner.  (FAP 6, 9-10, 12.)

Petitioner submitted in support of his petition the transcript of the proceedings held before the BPH on September 9, 2008.  (FAP, ex. C, doc. 10-1, 26-50; doc. 10-2, 1-50; doc. 10-3, 1-39.)  The transcript reflects that Petitioner received documents before the hearing (doc. 10-1, 30); attended the hearing (FAP, doc. 10-1, 26, 29; doc. 10-2; doc. 10-3, 1-39); addressed the board while under oath concerning numerous factors of parole suitability (doc. 10-1, 38-50; doc. 10-2, 1-50; doc. 10-3, 1-16); made a personal statement to the board in favor of parole (doc. 10-3, 27-30); and was represented by counsel, who

1  advocated and made a closing statement on Petitioner's behalf

2  (doc. 10-1, 26, 29-30, 36; doc. 10-3, 22-27).

3  Petitioner was present when the board stated its reasons for

4  the finding of unsuitability for parole, which was based on the

5  conclusion that there was an unreasonable risk of danger to

6  others if Petitioner were released.  (FAP, doc. 10-3, 31-39.)

7  The board relied on Petitioner's commitment offense and his lack

8  of insight into his offense.  (FAP, doc. 10-3, 31-39.)

9      IV.  <u>Failure to State a Cognizable Due Process Claim</u>

10      Petitioner argues that his liberty interest in parole was

11  violated by the BPH's decision because it lacked the support of

12  some evidence.  Petitioner contends that there was no new

13  evidence arising after parole was previously denied to justify

14  the instant denial of parole; further, the evidence presented

15  supported a grant of parole.

16      The Supreme Court has characterized as reasonable the

17  decision of the Court of Appeals for the Ninth Circuit that

18  California law creates a liberty interest in parole protected by

19  the Fourteenth Amendment Due Process Clause, which in turn

20  requires fair procedures with respect to the liberty interest.

21  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

22      However, the procedures required for a parole determination

23  are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

24  <u>of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]

25

26      [1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required
   with respect to a decision concerning granting or denying discretionary
27  parole; it is sufficient to permit the inmate to have an opportunity to be
   heard and to be given a statement of reasons for the decision made.  <u>Id.</u> at
28  16.  The decision maker is not required to state the evidence relied upon in
   coming to the decision.  <u>Id.</u> at 15-16.  The Court reasoned that because there

Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's

---

is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee.  Id. at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary.  Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole.  Id. at 15.

"some evidence" standard is not required by the Federal Due
Process Clause. Id. at 862-63.

Here, Petitioner asks this Court to engage in the very type
of analysis foreclosed by Swarthout. Petitioner does not state
facts that point to a real possibility of constitutional error or
that otherwise would entitle Petitioner to habeas relief because
California's "some evidence" requirement is not a substantive
federal requirement. Review of the record for "some evidence" to
support the denial of parole is not within the scope of this
Court's habeas review under 28 U.S.C. § 2254.

A petition for habeas corpus should not be dismissed without
leave to amend unless it appears that no tenable claim for relief
can be pleaded were such leave granted. Jarvis v. Nelson, 440
F.2d 13, 14 (9th Cir. 1971).

Here, it is clear from the allegations in the petition and
the supporting documentation that Petitioner attended the parole
suitability hearing, made statements to the BPH, and received a
statement of reasons for the decision of the BPH. Because it
appears from the face of the petition and the attached exhibits
that Petitioner received all process that was due, it is not
possible that Petitioner could state a tenable due process claim.

Accordingly, insofar as Petitioner claims a due process
violation because of the application of the "some evidence" rule,
the Court recommends that the petition be dismissed without leave
to amend.

V.   Alleged Denial of Equal Protection

Petitioner alleges generally that the board's decision
violated his right to equal protection of the laws. (FAP 5.)

8

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption or correctness by clear and convincing evidence.

The petitioner bears the burden of establishing that the decision of the state court was contrary to, or involved an unreasonable application of, the precedents of the United States Supreme Court. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to the Supreme Court's or concludes differently on an indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002). The state court

1  unreasonably applies clearly established federal law if it either

2  1) correctly identifies the governing rule but then applies it to

3  a new set of facts in a way that is objectively unreasonable, or

4  2) extends or fails to extend a clearly established legal

5  principle to a new context in a way that is objectively

6  unreasonable.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th

7  Cir.2002); see, Williams, 529 U.S. at 408-09.  An application of

8  law is unreasonable if it is objectively unreasonable; an

9  incorrect or inaccurate application of federal law is not

10  necessarily unreasonable.  Williams, 529 U.S. at 410.

11      Prisoners are protected under the Equal Protection Clause of

12  the Fourteenth Amendment from invidious discrimination based on

13  race, religion, or membership in a protected class subject to

14  restrictions and limitations necessitated by legitimate

15  penological interests.  Wolff v. McDonnell, 418 U.S. 539, 556

16  (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).  The Equal

17  Protection Clause essentially directs that all persons similarly

18  situated should be treated alike.  City of Cleburne, Texas v.

19  Cleburne Living Center, 473 U.S. 432, 439 (1985).  Violations of

20  equal protection are shown when a respondent intentionally

21  discriminates against a petitioner based on membership in a

22  protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686

23  (9th Cir. 2001), or when a respondent intentionally treats a

24  member of an identifiable class differently from other similarly

25  situated individuals without a rational basis, or a rational

26  relationship to a legitimate state purpose, for the difference in

27  treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564

28  (2000).

Here, Petitioner has only generally alleged that the decision violated his right to the equal protection of the laws. Petitioner has neither alleged nor shown that membership in a protected class was the basis of any alleged discrimination.  The Court does not find any factual basis for an inference of an intent to discriminate based on an impermissible characteristic. Further, Petitioner has not shown that he was treated differently from others who were similarly situated.

The Court concludes that Petitioner has failed to show that the BPH's denial of parole violated Petitioner's rights under the Equal Protection Clause of the Fourteenth Amendment.  Therefore, Petitioner has failed to show that any state court decision upholding the BPH's determination resulted in either a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Court notes that Petitioner alleges generally that application of standards of parole suitability under the Determinate Sentencing Law (DSL) violated equal protection when applied to him because he is an "ISL life prisoner," which the Court understands to be a prisoner sentenced under the Indeterminate Sentencing Law (ISL).  (Pet. 23.)

However, the DSL was enacted in 1976.  1976 Cal. Stat., ch. 113, § 1.  Petitioner alleges that he was convicted in 1990 and sentenced in 1991.  (Pet. 2.)  Thus, Petitioner has not shown that he was entitled to have his parole suitability considered

1  under the ISL.

2      The Court concludes that the facts alleged and documented by

3  Petitioner in his claim or claims pursuant to the Equal

4  Protection Clause fail to entitle Petitioner to habeas corpus

5  relief.

6      Accordingly, it will be recommended that Petitioner's equal

7  protection claim be denied.

8      VI.   First Amendment Claim

9      Petitioner argues that his rights under the First Amendment

10  were violated, citing Turner v. Hickman, 342 F.Supp.2d 887

11  (E.D.Cal. 2004).  (FAP 6-10.)

12      In Turner v. Hickman, 342 F.Supp.2d 887, a Christian inmate

13  alleged that parole authorities expressly conditioned in part the

14  plaintiff's eligibility for release on parole upon participation

15  in Narcotics Anonymous (NA).  Id. at 890.  This Court concluded

16  that by repeated application of the "coercion" test set forth in

17  Lee v. Weisman, 505 U.S. 577, 587 (1992), the Supreme Court had

18  made the applicable law clear.  Turner, 342 F.Supp.2d at 894.  By

19  expressly telling the plaintiff he needed to participate in NA to

20  be eligible for parole, the state had acted coercively to require

21  participation in a program in which the evidence showed that

22  belief in "God" was a fundamental requirement of participation.

23  Id. at 895-96.  Accordingly, the First Amendment prohibited the

24  requirement.[2]  Id. at 896-99.

25      In Inouye v. Kemna, 504 F.3d 705 (9th Cir. 2007), the court

26

27  _____

28      [2] Because Petitioner cited to Turner v. Hickman, the Court understands
Petitioner's claim to relate to having been coerced to participate in a
program which required belief in a higher power.

considered whether state parole authorities had qualified immunity in a § 1983 suit by a plaintiff who alleged that as a condition of parole, they required his attendance in drug treatment programs (AA and NA) rooted in a regard for a higher power.  In response to the argument of a defendant supervisory parole officer that the law was not clearly established at the time, the court held that the law "was and is very clear, precluding qualified immunity...." Inouye, 504 F.3d at 711-12.

The court found that there had been consistent articulation of the principle that the government may not coerce anyone to support or participate in religion or its exercise, or punish anyone for not so participating. Id. at 713 (citing Everson v. Board of Education of Ewing Township, 330 U.S. 1 (1947) and Lee v. Weisman, 505 U.S. 577, 587 (1992)).  The court further noted that the basic test for Establishment Clause violations remains that stated in Lemon v. Kurtzman, 403 U.S. 602, 613 (1971), namely, that the government acts 1) have a secular legislative purpose, 2) not have a principal or primary effect which either advances or inhibits religion, and 3) not foster an excessive government entanglement with religion. Id. at 713 n.7.

The court concluded that recommending revocation of parole for a parolee's failure to attend the programs after an order to participate was given was unconstitutionally coercive. Id. at 713-14.  In finding the law clear, the court in Inouye relied not only on lower court decisions, but also in part on the decisions of the United States Supreme Court and the absence of any Supreme Court case upholding government-mandated participation in religious activity in any context. Id. at 715.

At the parole hearing held in the instant case, Deputy Commissioner Weaver referred to the preceding denial of parole that had occurred on September 12, 2006, and the accompanying recommendation of the previous BPH panel that Petitioner gain insight, participate by reading self-help books and making book reports, and get "positive chronos." (FAP, doc. 10-2, 34.) The BPH reviewed Petitioner's progress in pertinent substance abuse and self-help programs, and when Commissioner Weaver observed to Petitioner, "You've been in AA and NA for many years," Petitioner replied in the affirmative. (FAP, doc. 10-2, 34-35: 1-12; doc. 10-3, 1-3.) When Petitioner was asked what he had learned and if he worked "the steps," he replied, "Yes, sir." Commissioner Weaver and Petitioner discussed Petitioner's favorite steps. (Id. at 35:13-28; doc. 10-3, 1-4.) Petitioner had seen a psychologist in an effort to fulfill the BPH's previous suggestion of self-help or counseling, but he had been told that they did not have anything like that. (Id. at 36-37.)

A psychiatric report reflected that Petitioner had acknowledged an alcohol problem but had failed to accept full responsibility for his crime or explore the underlying causes for his behavior; however, Petitioner had been involved in AA and NA. (Id. at 40, 46, 48; doc. 10-3, 1.) Petitioner described himself as religious, but he did not assist at chapel; rather, he read his Bible and conversed directly with God. (Doc. 10-3, 20.) In her closing statement, Petitioner's attorney represented that Petitioner had participated in a lot of self-help and had been involved in AA/NA for fourteen (14) to sixteen (16) years in order to stay out of trouble. (Doc. 10-3, 23-24, 26.) In his

14

own closing statement, Petitioner stated that he wanted to open

an AA group in order to help others and to maintain his own

sobriety.  (Doc. 10-3, 29.)

In explaining the reasons for its denial of parole, the

following colloquy occurred:

**PRESIDING COMMISSIONER PRIZMICH:**  And what
we're going to do in the period coming
up is to perhaps sit down with a counselor, a
priest, someone that can counsel you with
regard to this incident and maybe go over with
you, someone that you trust.  And I'm sure you're a
religion (sic) man.  I'm sure you can find someone that
you can sit down with and talk over the specifics of
this with because I think you need someone to feed back
to you some of the areas of concerns that keep coming
up, that is, your recollection of the events.  You say you
don't remember things but you specifically do remember
the things that bad (sic) happened to you.

**INMATE DELEON:**  Yes, sir.

**PRESIDING COMMISSIONER PRIZMICH:**  And what we want is
an understanding more than just it wouldn't have happened
if you'd (sic) been drinking.  There needs to be a little
bit deeper understanding I think on your part, and I
think that's just going to take some more work on your
part.  Okay.  And I would specifically suggest in the
12 Steps that you look at step number four.  It has to
do with character defects.  That's not an easy step to
do and we think that perhaps that step for you might be
one that could provide some insight to a greater degree
than what you have here.  But at any rate, we're going
to want you to take a look in this next year and either
sit down with somebody and be prepared to talk over with
the next Panel what work that you've done, and we're
going to want to see some evidence of you having a greater
level of insight other than I just got drunk, had anywhere
from 18 to 22 beers, I don't remember a thing and it was
all my responsibility.  That's real superficial.  That's
real superficial.  What we want is an understanding of
why you started drinking to that degree to begin with.
What was going on, what was it about you that--because
normal people don't do that.  So that's what we're going
to want you to look into, okay, and we think that it
would be helpful if you sat down with somebody, with
somebody you trusted, and go over that.  Have them
ask you questions, not pat you on the back, but ask
you questions that force you to look into what was
going on with you at that time a little bit more than
just allowing you (sic) say I just got drunk.  Plenty

15

> of people get drunk in bars and out in the street and
> don't take the actions that you took.  So we want you
> to look into that.

**INMATE DELEON:**  Thank-you.

(Doc. 10-3, 32-34.)

The commissioner then emphasized that Petitioner had attacked multiple victims and fired rounds of ammunition that could have killed a child; the offense was carried out in a manner that demonstrated complete disregard for anybody's safety. (Id. at 34.)  The commissioner reiterated that the BPH and the psychologists wanted to ensure Petitioner came to grips with having made bad choices.  (Id. at 34-35.)  The commissioner then stated the following:

> You've done a lot of work with AA.  We think that there
> still could be more.  I know a lot of the panels ask what
> you do with regard to steps eight and nine, but steps
> eight and nine are not as important to me, and they
> shouldn't be as important to you as the steps that
> come before that, because everybody focuses on that.

(Id. at 35:14-19.)

Presiding Commissioner Prizmich then noted that previous step was a searching self-examination to determine who the Petitioner was and who he had been before, and it was suggested that Petitioner look that over and pray about it; the BPH was concerned about Petitioner's insight.  (FAP, doc. 10-3, 35-36.) Petitioner responded that it was okay.  (Id. at 36.)

Presiding Commissioner Prizmich then noted that it was likely that Petitioner would be deported to Guatemala, and stated the following:

> And what we're going to want to see with regard to your
> parole plans and what we're want (sic) you to add is
> have whoever is down there, whoever your contact person is
> down there, find out about AA and NA programs in the area

16

that you will be living at, because we're going to want
to know that there are programs for you there, and we
believe there would be, but it's important that you make
those contacts and provide us with that information because
what that tells us is that you're committed to staying
there, that you're committed to continuing to go to AA.
So we think that's important for you, okay?

(Id. at 36.)

The commissioner then stated in pertinent part:

Generally speaking, sir, with regard to the comments
that I made, we feel that there is still some risk there
and it is at this point unreasonable for us to conclude
that you would be a completely safe bet if you went
out there.  We need some more insight and we want you
to work on that in this next year and we want your parole
plans to have some connection to either a 12 Step program
or some connection to a church that has as a counseling
component, drug and alcohol counseling, okay, because
we don't want you going back there.

(Doc. 10-3, 36-37.)  In reiterating the need for development of
further insight, the commissioner stated:

We want you to do some more work on that.  We want
you to continue working on your self-help programming,
remain disciplinary free, and we're strongly urging
you to sit down with someone, whether it's a priest
or some counselor, and go over the details of this so
that may help you focus you (sic) on having a little
bit more insight.

(Doc. 10-3, 38.)  Commissioner Weaver also encouraged Petitioner
to work on the fourth step.  (Id.)  Presiding Commissioner
Prizmich asked Petitioner to remember the AA in his parole plans,
do the work he was to do, and stay out of trouble.  (Id.)

     The transcript of the BPH's reasons for denying parole is
fairly read as including a suggestion that Petitioner continue to
work on the twelve steps or participate in a twelve-step program,
talk with a counselor or priest to develop insight, and develop
parole plans that would include some connection to either a
twelve-step program or a church with a drug and alcohol

17

counseling program.  Petitioner was encouraged to provide
information on, or continue with, AA.  However, in context, it
appears that the overriding criterion with respect to such
desired programming was a twelve-step, drug and alcohol
counseling component.  Petitioner had already extensively
participated in AA and had stated that he wanted not only to
continue with AA, but also to found an AA group (presumably in
Guatemala) for himself and for others.  Thus, the commissioners'
reference to AA was understandable in the context of Petitioner's
documented, pre-existing, and apparently voluntary choice to
participate in AA.  However, in their commentary, the
commissioners were careful to present counseling as an
alternative to a formal AA program.

In summary, the record does not support a finding that the
BPH required Petitioner to attend church or to participate in an
AA program as distinct from a secular, twelve-step, drug and
alcohol counseling program.  Further, it does not appear that any
part of the basis for the denial of parole was a failure to
participate in AA or any other religious program.
Accordingly, the record of the proceedings before the BPH shows
that Petitioner was not required to attend AA or any specific
programing that involved belief in a higher power.  The record
does not contain facts supporting a finding that Petitioner's
First and Fourteenth Amendment rights were violated.

In conclusion, Petitioner has not shown that the BPH's
decision violated his First and Fourteenth Amendment rights, or
that any state court decision upholding the BPH's decision
resulted in either a decision that was contrary to, or involved

18

1  an unreasonable application of, clearly established federal law,

2  as determined by the Supreme Court of the United States, or a

3  decision that was based on an unreasonable determination of the

4  facts in light of the evidence presented in the state court

5  proceeding.

6       Accordingly, it will be recommended that Petitioner's First

7  Amendment claim be denied.

8       VII.  <u>Alleged Ex Post Facto Violation</u>

9       Petitioner alleges generally that the BPH's decision

10  violated the Ex Post Facto Clause.  (FAP 5, 9.)

11      The Constitution provides, "No State shall... pass any... ex

12  post facto Law."  U.S. Const. art I, § 10.  The Ex Post Facto

13  Clause prohibits any law which: 1) makes an act done before the

14  passing of the law, which was innocent when done, criminal; 2)

15  aggravates a crime and makes it greater than it was when it was

16  committed; 3) changes the punishment and inflicts a greater

17  punishment for the crime than when it was committed; or 4) alters

18  the legal rules of evidence and requires less or different

19  testimony to convict the defendant than was required at the time

20  the crime was committed.  <u>Carmell v. Texas</u>, 529 U.S. 513, 522

21  (2000).  Application of a state regulation retroactively to a

22  defendant violates the Ex Post Facto Clause if the new

23  regulations create a "sufficient risk" of increasing the

24  punishment for the defendant's crimes.  <u>Himes v. Thompson</u>, 336

25  F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of</u>

26  <u>Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)).  When the rule

27  or statute does not by its own terms show a significant risk, the

28  prisoner must demonstrate, by evidence drawn from the rule's

practical implementation by the agency charged with exercising
discretion, that its retroactive application will result in a
longer period of incarceration than under the earlier rule.
Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

Petitioner bases this claim in part on the BPH's continued
reliance on the commitment offense and on other reasons that had
supported a denial of parole at previous suitability hearings.
(FAP 9.)  However, reliance on factors that predated the parole
suitability hearing does not establish any retroactive
application of any law.

Petitioner also alleges that application of parole
suitability factors under California's Determinate Sentencing Law
(DSL) violated the Ex Post Facto Clause because he was sentencing
under the ISL.  (FAP 23.)  However, the DSL was enacted in 1976.
1976 Cal. Stat., ch. 113, § 1.  Petitioner alleges that he was
convicted in 1990 and sentenced in 1991.  (FAP 2.)  Thus,
Petitioner has not shown that he was entitled to have his parole
suitability considered under the ISL.

Further, the parties have not cited, and the Court has not
found, any clearly established United States Supreme Court law
governing this subject.  This circuit has held that even if a
defendant is sentenced under California's ISL, he or she is not
disadvantaged for ex post facto purposes by application of the
DSL's standards to determine parole suitability because the DSL
guidelines require consideration of the same criteria as the ISL
require.  Connor v. Estelle, 981 F.2d 1032, 1033-34, (9th Cir.
1992) (per curiam).  Petitioner has not demonstrated any
difference in the two sets of standards.  Further, Petitioner has

not provided any evidence that would support a finding that any difference caused any increase in punishment, or any risk of such an increase in his case.

In summary, Petitioner has not shown that he suffered any ex post facto violation.

Accordingly, it will be recommended that Petitioner's ex post facto claim be denied.

VIII.  <u>Allegations Concerning State Law</u>

In various respects, Petitioner argues that the board's decision violated state regulatory, statutory, and case law.

Petitioner contends that he had a state-created liberty interest that was infringed by the BPH's denial of parole. Although Petitioner may have such an interest, only minimal due process is required to protect such an interest.  <u>Swarthout</u>, 131 S.Ct. 859, 862.  As the foregoing analysis demonstrates, Petitioner received all process that was due at the parole suitability hearing.

To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  <u>Wilson v. Corcoran</u>, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

Accordingly, to the extent that Petitioner might have alleged or established a mere violation of state law, Petitioner

21

1 has not demonstrated, and cannot demonstrate, entitlement to

2 relief in a proceeding pursuant to 28 U.S.C. § 2254.

3     Thus, it will be recommended that Petitioner's claim or

4 claims concerning alleged violations of state law be denied.

5     IX.   <u>Cruel and Unusual Punishment</u>

6     Petitioner generally alleges that the BPH's decision

7 constituted cruel and unusual punishment.  (FAP 10.)

8     There is no right under the Federal Constitution to be

9 conditionally released before the expiration of a valid sentence,

10 and the states are under no duty to offer parole to their

11 prisoners.  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 862

12 (2011).  A criminal sentence that is "grossly disproportionate"

13 to the crime for which a defendant is convicted may violate the

14 Eighth Amendment.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003);

15 <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

16 concurring); <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980).

17     Outside of the capital punishment context, the Eighth

18 Amendment prohibits only sentences that are extreme and grossly

19 disproportionate to the crime.  <u>United States v. Bland</u>, 961 F.2d

20 123, 129 (9th Cir. 1992) (quoting <u>Harmelin v. Michigan</u>, 501 U.S.

21 957, 1001, (1991) (Kennedy, J., concurring)).  Such instances are

22 "exceedingly rare" and occur in only "extreme" cases.  <u>Lockyer v.</u>

23 <u>Andrade</u>, 538 U.S. at 72-73; <u>Rummel</u>, 445 U.S. at 272.  So long as

24 a sentence does not exceed statutory maximums, it will not be

25 considered cruel and unusual punishment under the Eighth

26 Amendment.  See <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 930

27 (9th Cir.1998); <u>United States v. McDougherty</u>, 920 F.2d 569, 576

28 (9th Cir. 1990).  Further, it has been held that a sentence of

fifty years to life for murder with use of a firearm is not grossly disproportionate.  Plasencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

Here, Petitioner was convicted of second degree murder.  The punishment for second degree murder is fifteen years to life. Cal. Pen. Code § 190(a).  Petitioner's sentence thus does not exceed the statutory maximum.[3]

The Court, therefore, concludes that Petitioner has not shown that the BPH's denial of his parole constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Accordingly, the Court recommends that Petitioner's claim concerning cruel and unusual punishment be denied.

### X.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial

---

[3] Under California law, it is established that an indeterminate life sentence is in legal effect a sentence for the maximum term of life.  People v. Dyer, 269 Cal.App.2d 209, 214 (1969).  Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms).  Cal. Pen. Code § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a).  Under California's Determinate Sentencing Law, an inmate such as Petitioner who is serving an indeterminate sentence for murder may serve up to life in prison, but he does not become eligible for parole consideration until the minimum term of confinement is served.  In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).  The actual confinement period of a life prisoner is determined by an executive parole agency.  Id. (citing Cal. Pen. Code § 3040).

of a constitutional right.  § 2253(c)(2).  Under this standard, a

petitioner must show that reasonable jurists could debate whether

the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement

to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

certificate should issue if the Petitioner shows that jurists of

reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district

court was correct in any procedural ruling.  Slack v. McDaniel,

529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of

the claims in the habeas petition, generally assesses their

merits, and determines whether the resolution was debatable among

jurists of reason or wrong.  Id.  It is necessary for an

applicant to show more than an absence of frivolity or the

existence of mere good faith; however, it is not necessary for an

applicant to show that the appeal will succeed.  Miller-El v.

Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of

appealability when it enters a final order adverse to the

applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could

debate whether the petition should have been resolved in a

different manner.  Petitioner has not made a substantial showing

of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline

1   to issue a certificate of appealability.

2       XI.   <u>Recommendation</u>

3       Accordingly, it is RECOMMENDED that:

4       1)   Petitioner's due process claim concerning the evidence

5   supporting the BPH's denial of parole be DISMISSED without leave

6   to amend because Petitioner has failed to state a claim entitling

7   him to habeas corpus relief in a proceeding pursuant to 28 U.S.C.

8   § 2254; and

9       2)   The remaining claims in the petition be DENIED; and

10      3)   The Court DECLINE to issue a certificate of

11  appealability; and

12      4)   The Clerk be DIRECTED to enter judgment for Respondent.

13      These findings and recommendations are submitted to the

14  United States District Court Judge assigned to the case, pursuant

15  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

16  the Local Rules of Practice for the United States District Court,

17  Eastern District of California.  Within thirty (30) days after

18  being served with a copy, any party may file written objections

19  with the Court and serve a copy on all parties.  Such a document

20  should be captioned "Objections to Magistrate Judge's Findings

21  and Recommendations."  Replies to the objections shall be served

22  and filed within fourteen (14) days (plus three (3) days if

23  served by mail) after service of the objections.  The Court will

24  then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

25  636 (b)(1)(C).  The parties are advised that failure to file

26  objections within the specified time may waive the right to

27  ///

28  ///

1  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

2  1153 (9th Cir. 1991).

3

4  IT IS SO ORDERED.

5  **Dated:    May 27, 2011**              /s/ Sheila K. Oberto
                                  UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28